AO 442 (Rev. 01/09) Arrest Warrant

# UNITED STATES DISTRICT COURT

for the

Judicial District of Puerto Rico

| United States of America | ) | |
|---|---|---|
| v. | ) | Case No.   19- 458 (ADc) |
| Ramón A. Julbe-Rosa | ) | |
| *Defendant* | ) | |

## ARREST WARRANT

To:      Any authorized law enforcement officer

**YOU ARE COMMANDED** to arrest and bring before a United States magistrate judge without unnecessary delay

*(name of person to be arrested)*   Ramón A. Julbe-Rosa                                                                ,

who is accused of an offense or violation based on the following document filed with the court:

X Indictment          ☐ Superseding Indictment     ☐ Information     ☐ Superseding Information     ☐ Complaint
☐ Probation Violation Petition     ☐ Supervised Release Violation Petition     ☐ Violation Notice     ☐ Order of the Court

This offense is briefly described as follows:

Violations of Title 18, United States Code, Sections 641, 1001, 1040, and 1347; Title 21, United States Code, Sections 331(d) and 333(a)(2); and Title 42, United States Code, Sections 408(a)(3) and 408(a)(4).

Date:   07·24·2019

_____
*Issuing officer's signature*

City and state:   San Juan PR

USMJ
_____
*Printed name and title*

| Return |
|---|
| This warrant was received on *(date)* _____ , and the person was arrested on *(date)* _____ |
| at *(city and state)* _____ |
| Date: _____          _____ |
| *Arresting officer's signature* |
| _____ |
| *Printed name and title* |

AO 442 (Rev. 01/09) Arrest Warrant (Page 2)

AO 442 (Rev. 01/09) Arrest Warrant

# UNITED STATES DISTRICT COURT
### for the

Judicial District of Puerto Rico

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | Case No.   19- 488 (ADC) |
| Ena I. Octaviani-Santana | ) | |
| *Defendant* | ) | |

## ARREST WARRANT

To:     Any authorized law enforcement officer

**YOU ARE COMMANDED** to arrest and bring before a United States magistrate judge without unnecessary delay

*(name of person to be arrested)*   Ena I. Octaviani-Santana

who is accused of an offense or violation based on the following document filed with the court:

X  Indictment          ☐ Superseding Indictment     ☐ Information     ☐ Superseding Information     ☐ Complaint

☐ Probation Violation Petition     ☐ Supervised Release Violation Petition     ☐ Violation Notice     ☐ Order of the Court

This offense is briefly described as follows:

Violations of Title 21, United States Code, Sections 331(d) and 333(a)(2); and Title 42, United States Code, Section 408(a)(3).

Date: 07 · 24 · 2019

_____
Issuing officer's signature

City and state: San Juan PR

USMJ
_____
Printed name and title

| Return |
|---|
| This warrant was received on *(date)* _____, and the person was arrested on *(date)* _____ |
| at *(city and state)* _____. |
| Date: _____     _____ |
|                                        Arresting officer's signature |
|                               _____ |
|                                        Printed name and title |

AO 442 (Rev. 01/09) Arrest Warrant (Page 2)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>**Plaintiff,**<br><br>v.<br><br><br>**[1] RAMON A. JULBE-ROSA,<br>(COUNTS ONE – SEVENTEEN),**<br><br>**[2] ENA I. OCTAVIANI-SANTANA,<br>(COUNTS TWO & FIFTEEN),**<br><br>**Defendants.** | **INDICTMENT**<br><br>**CRIMINAL NO.** 19-458 (ADC)<br><br>**CRIMINAL VIOLATIONS:**<br><br>**18 USC § 641<br>18 USC § 1001<br>18 USC § 1040<br>18 USC § 1347<br>21 USC § 331(d)<br>21 USC § 333(a)(2)<br>42 USC § 408(a)(3)<br>42 USC § 408(a)(4)**<br><br>**SEVENTEEN COUNTS** |

The Grand Jury charges that:

## GENERAL ALLEGATIONS

At times material to this Indictment:

### I.     The Social Security Administration

1. The Social Security Administration ("SSA") is an agency of the United States responsible for administering the Disability Insurance Benefits Program.

2. SSA provides disability insurance benefits ("DIB") in the form of cash and other benefits to workers with severe, long-term disabilities, who have worked in Social Security-covered employment for the required length of time. Spouses and dependent children of disabled workers may also be eligible to receive benefits.

3. To qualify for DIB, an individual must not have reached full retirement age and must (1) meet the insured status requirements, (2) submit an application, (3) complete a 5-month waiting period, and (4) be under a disability as defined in the Social Security Act ("Act"), Title 42, United States Code, Sections 416(i) and 423(d). 20 C.F.R. Section 404.315.

4. Under the Act, the term "disability" is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment

Indictment
*US v. [1] Ramón Julbe-Rosa and [2] Ena I. Octaviani-Santana*

which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. Title 42, <u>United States Code</u>, Sections 416(i) and 423(d).

## II.     <u>SSA Disability Determinations and Beneficiary Responsibilities</u>

5.    Pursuant to SSA regulations, a DIB claimant must prove to SSA that he or she is disabled by furnishing medical and other evidence with the application.  SSA evaluates the application and evidence to determine the claimant's medical impairments and the effects of those impairments on the claimant's ability to work on a sustained basis. 20 C.F.R. Section 404.1512(a).

6.    In determining whether the claimant is disabled, SSA considers the claimant's symptoms and the medical evidence submitted. Symptoms are the claimant's own statements of his or her physical or mental impairments or limitations.  SSA evaluates the claimant's symptoms, including pain, and the extent to which those symptoms are consistent with the objective medical evidence and other evidence. For example, SSA considers statements made by the claimant about how the symptoms of his or her medical impairments affect activities of daily living and ability to work.  20 C.F.R. Section 404.1529(a).

7.    SSA's initial determination of the claimant's eligibility for DIB directly depends upon the claimant and the physicians providing accurate, current and truthful information.  Claimants and physicians are advised that criminal penalties exist for providing false statements and information to SSA.  The responsibility to provide accurate, current and truthful information continues even after SSA determines that the claimant is entitled to DIB, and thus becomes a DIB beneficiary. DIB beneficiaries are required to promptly notify SSA of any changes to their medical and financial eligibility status, such as when their medical condition improves, they return to work,

Indictment
*US v. [1] Ramón Julbe-Rosa and [2] Ena I. Octaviani-Santana*

they increase the amount they work, or their work earnings increase. 20 C.F.R. Section 404.1588(a).

8. DIB claimants and beneficiaries are regularly notified of their ongoing responsibility to provide SSA with accurate, current and truthful information about any improvements in their medical condition or work status. Claimants and/or beneficiaries are informed of their responsibility to report updated information through various methods, including but not limited to: the DIB application form and corresponding instructions, advisements by SSA claims representatives, and through other notices. Additionally, the initial DIB award notices sent to beneficiaries detail their reporting responsibilities.

## III.   The Medicare Program

9. The Medicare Program ("Medicare") was a federal program that provides medical insurance for covered services to any person 65 years or older, to certain disabled persons, and to individuals with chronic renal disease who elected coverage under the program. Medicare was administered by the Centers for Medicare and Medicaid Services ("CMS") an agency of the United States Department of Health and Human Services ("HHS"), formerly known as the Health Care Financing Administration ("HCFA"). Individuals who receive benefits under Medicare are commonly referred to as Medicare "beneficiaries." Medicare is a health care benefit program as defined by Title 18, United States Code, Section 24(b).

10. The Medicare program was divided into four (4) different "parts". "Part A" of Medicare covers health services provided by hospitals, skilled nursing facilities, hospices and home health agencies. "Part B" of the Medicare Program is a medical insurance program that covers, among other things, certain physician services, outpatient services, and other services, including face to face office visits. "Part C" of Medicare, commonly referred to as Medicare Advantage (MA),

Indictment
*US v. [1] Ramón Julbe-Rosa and [2] Ena I. Octaviani-Santana*

provides beneficiaries with all of the services provided under Parts A and B (except hospice care), in addition to mandatory benefits and optional supplemental benefits. "Part D" is a voluntary outpatient prescription drug benefit for Medicare beneficiaries.

11. A beneficiary eligible for Medicare may choose to be covered under what is commonly referred to as "traditional" Medicare, which is Medicare Parts A and B, each of which has its own eligibility criteria. Under Medicare Parts A and B, CMS reimburses healthcare providers for services rendered via submission of claims. This is known as a fee-for-service (FFS) payment system.

12. Another option for a Medicare beneficiary, who is entitled to and enrolled in both Parts A and B of Medicare, is Medicare Advantage, in which a beneficiary may opt instead to enroll in a Medicare Advantage Plan ("MA Plan") managed by a private insurance company ("MA Organization"). *See* Subchapter XVIII of the Social Security Act, 42 U.S.C. §§ 1395w-21 to 1395w-28. Some MA Plans offer prescription drug coverage under Part D; these are called MA-PD Plans. If a beneficiary is enrolled in a MA-PD plan, the enrollee must receive his/her Medicare prescription drug benefit through that plan.

13. In Medicare Part C, the United States pays to each MA Organization a fixed, capitated (per beneficiary enrollee in each MA Plan) amount, adjusted by the expected risk of each beneficiary, on a monthly basis for the provision of items and services that are covered for Medicare beneficiaries under Parts A and B of the Social Security Act. This per-member, per-month payment does not depend on the amount of healthcare services provided to an enrollee. Each year this payment is based on a bidding process with CMS, in which each MA Plan, through an MA Organization, submits a bid amount, which is then compared to an administratively set

4

Indictment
*US v. [1] Ramón Julbe-Rosa and [2] Ena I. Octaviani-Santana*

benchmark set by CMS based on a statutory formula. *See* 42 U.S.C. § 1395w-23; *see also* 42 C.F.R. § 422.2, subparts F and G.

14. Pursuant to Title 42, <u>United States Code</u>, Section 426, every individual who has not attained the age of sixty-five (65) and received DIB for a period of twenty-four (24) months is entitled to receive hospital insurance benefits under Part A of the Medicare Program and becomes eligible to apply and receive Parts B and C of the Medicare Program.

## IV.   <u>U.S. Department of Veterans Affairs - Individual Unemployability Benefits</u>

15.   The U.S. Department of Veterans Affairs (VA) is a department or agency of the United States whose mission is to care for U.S. military veterans and their dependents. In furtherance of this mission, VA runs the largest hospital system in the U.S., as well as administering a wide range of financial benefits programs.

16.   Individual Unemployability ("IU") is a part of VA's disability compensation program that allows VA to pay certain veterans at the 100% disabled rate, even though VA has not rated their service-connected disabilities at the total level. An eligible veteran must be unable to maintain substantially gainful employment as a result of his/her service connected disabilities. Additionally a veteran must have: (1) one service-connected disability ratable at 60% or more, or (2) two or more service-connected disabilities, at least one disability at 40% or more with a combined rating of 70% or more.

## V.   <u>The Federal Food, Drug, and Cosmetic Act</u>

17. The United States Food and Drug Administration ("FDA") was the federal agency responsible for protecting the health and safety of the public by enforcing the Federal Food, Drug, and Cosmetic Act, Title 21, <u>United States Code</u>, Sections 301-399f ("FDCA"), by, among other

5

Indictment
*US v. [1] Ramón Julbe-Rosa and [2] Ena I. Octaviani-Santana*

things, ensuring that drugs for human use were safe and effective for their intended uses, and by ensuring that the labeling of such drugs bore true and accurate information.

18. The FDCA defined a "drug" to include "articles intended for use in the diagnosis, cure, mitigation, treatment, or prevention of disease in man," and "articles (other than food) intended to affect the structure or any function of the body of man." Title 21, United States Code, Section 321(g)(1)(B) and (C).

19. Under the FDCA, a "new drug" was any drug which was not generally recognized, among experts qualified by scientific training and experience to evaluate the safety and effectiveness of drugs, as safe and effective for use under the conditions prescribed, recommended, or suggested in the labeling thereof. Title 21, United States Code, Section 321(p)(1). To be lawfully introduced into interstate commerce for commercial distribution, new drugs required an approved marketing application, including new drug applications ("NDAs") or abbreviated new drug applications ("ANDAs"). Title 21, United States Code, Section 355.

20. Under the FDCA, "label" was defined as "a display of written, printed, or graphic matter upon the immediate container of any article." Title 21, United States Code, Section 321(k). The term "labeling," in turn, was defined as "all labels and other written, printed, or graphic matter (1) upon any article or any of its containers or wrappers, or (2) accompanying such article." Title 21, United States Code, Section 321(m).

21. The FDCA prohibited the introduction, or delivery for introduction, into interstate commerce of any unapproved new drug, or the causing thereof. Title 21, United States Code, Sections 331(d) and 355(a).

22. The FDCA defined interstate commerce as: "(1) commerce between any State or Territory and any place outside thereof, and (2) commerce within the District of Columbia or

6

within any other territory not organized with a legislative body." Title 21, <u>United States Code</u>, Section 321(b).

## VI.   <u>FEMA</u>

23.  The Federal Emergency Management Agency ("FEMA") was an agency within the Department of Homeland Security ("DHS"), a department of the executive branch of the Government of the United States.

24.  On September 20, 2017, Hurricane María struck Puerto Rico. In response, on the same date, President Donald Trump issued a major disaster declaration under section 401 of the Robert T. Stafford Disaster Relief and Emergency Assistance Act, Title 42, <u>United States Code</u>, Section 5121 *et seq.* (the "Stafford Act"), for Puerto Rico (FEMA-4339-DR). As a result of this declaration, FEMA was authorized to provide Individual and Direct Assistance and any other form of assistance under the Stafford Act deemed appropriate including but not limited to the following:

a. Critical Needs Assistance, which was financial assistance to individuals and households who, as a result of the disaster, have immediate or critical needs because they are displaced from their primary dwelling and;

b. Home Repair Assistance, which was financial assistance to a homeowner to repair a primary residence damaged as a result of a Presidentially-declared disaster. This type of assistance was intended to make the damaged home safe, sanitary, or functional, including assistance for the repair of real property components such as foundation, exterior walls, roof, windows, doors, walls, ceilings, and cabinetry.

25.  The United States Department of Treasury provided disaster assistance payments either by sending checks through the U.S. mail to the applicant or by electronic funds transfer ("EFT") to a bank account specified by the applicant.

Indictment
*US v. [1] Ramón Julbe-Rosa and [2] Ena I. Octaviani-Santana*

## VII.   U.S. Small Business Administration

26.   The Small Business Administration ("SBA") is an agency of the United States that provides long-term, low-interest loans to homeowners, businesses, and non-profit organizations in the aftermath of a declared disaster.  SBA disaster loan proceeds are to be used solely for the repair or replacement or real estate, personal property (including motor vehicles), inventory, supplies, machinery, and equipment damaged during a declared disaster or for working capital to help a small business recover from economic injury caused by a declared disaster.  Individuals seeking SBA disaster loans must provide truthful and correct information to the SBA at all phases of the disaster loan process.  Recipients of SBA disaster loans must repay the funds to the SBA over the term and at the interest rate designated in the disaster loan promissory note.  Recipients of SBA disaster loans must return to the SBA any disaster loan disbursements not used to replace or repair property damaged by the disaster.

27.   Upon a Presidential disaster declaration, an applicant may first register with FEMA to obtain a registration number. Application for assistance can be completed online for all types of SBA disaster assistance loans as well as by U.S mail or in person.  To be eligible for SBA disaster assistance loans, applicants must be located in a declared disaster area.

28.   As a result of Hurricane Maria and the subsequent declaration under the Stafford Act, residents in Puerto Rico were eligible to apply directly to the SBA for low interest disaster loans to repair damage to their primary residences and businesses.

### COUNT ONE
**Theft of Government Property**
**(Title 18 United States Code § 641)**

1.   Paragraphs one through eight of the General Allegations are re-alleged and incorporated herein by reference, as if fully set forth herein.

Indictment
*US v. [1] Ramón Julbe-Rosa and [2] Ena I. Octaviani-Santana*

2.     Between on or about January 1, 2012, and continuing through on or about the date of this Indictment, in the District of Puerto Rico, the defendant,

**[1] RAMON A. JULBE-ROSA,**

did knowingly and willfully embezzled, stole, and converted to his own use or the use of another, money of the SSA, a department or agency of the United States, namely Social Security Disability Insurance Benefit payments to which he knew he was not entitled, having a value of approximately $79,369.80. In violation of Title 18, United States Code, Section 641.

## COUNT TWO
### False Statement or Representation to SSA
### (Title 42, United States Code, § 408(a)(3))

1.     Paragraphs one through eight of the General Allegations are re-alleged and incorporated herein by reference, as if fully set forth herein.

2.     On or about July 5, 2018, in the District of Puerto Rico, the defendant,

**[1] RAMON A. JULBE-ROSA,**

aided and abetted by **[2] ENA I. OCTAVIANI-SANTANA** in a matter within the jurisdiction of the Social Security Administration, made or caused to be made a false statement or representation of a material fact for use in determining rights to Social Security Disability Insurance payments, namely **[1] RAMON A. JULBE-ROSA,** aided and abetted by **[2] ENA I. OCTAVIANI-SANTANA,** stated to the SSA, during a Continuing Disability Review, that **[1] RAMON A. JULBE-ROSA** was not working or receiving any type of income due to work activity, although the defendants, there and then well knew that **[1] RAMON A. JULBE-ROSA** was working and generating income. All in violation of Title 42, United States Code, Section 408(a)(3) and Title 18, United States Code, Section 2.

9

Indictment
*US v. [1] Ramón Julbe-Rosa and [2] Ena I. Octaviani-Santana*

## COUNT THREE
### Concealment or Failure to Disclose Event to SSA
### (Title 42 United States Code § 408(a)(4))

1.  Paragraphs one through eight of the General Allegations are re-alleged and incorporated herein by reference, as if fully set forth herein.

2.  Between on or about January 1, 2012, and continuing through on or about the date of this Indictment, in the District of Puerto Rico, the defendant,

### [1] RAMON A. JULBE-ROSA,

in a matter within the jurisdiction of the Social Security Administration, having knowledge of the occurrence of an event affecting his initial or continued right to Social Security Disability Insurance Benefit payments, concealed or failed to disclose such event with the intent to fraudulently secure payments either in a greater amount that was due or when no payments were authorized. Specifically, the defendant intentionally concealed or failed to disclose the fact that he was working. All in violation of Title 42, United States Code, Section 408(a)(4).

## COUNT FOUR
### Health Care Fraud
### (Title 18, United States Code, § 1347)

1.  Paragraphs one through fourteen of the General Allegations are re-alleged and incorporated herein by reference, as if fully set forth herein.

### SCHEME AND ARTIFICE TO DEFRAUD

2.  The scheme and artifice to defraud was that the defendant, **[1] RAMON A. JULBE-ROSA**, would fraudulently obtain DIB and Medicare benefits by submitting false and fraudulent information to the SSA and by concealing to the SSA the fact that he was able to work.

### MANNER AND MEANS OF THE SCHEME AND ARTIFICE TO DEFRAUD

The manner and means used by the defendant to accomplish the scheme and artifice to

Indictment
*US v. [1] Ramón Julbe-Rosa and [2] Ena I. Octaviani-Santana*

defraud included, among other things, the following:

3.     The allegations contained in Counts One through Three of this Indictment are re-alleged and incorporated herein by reference, as if fully set forth herein.

4.     On May 1, 1993, as a result of his DIB, **[1] RAMON A. JULBE-ROSA** enrolled in Part A and B of the Medicare Program.

5.     From January 1, 2012 through December 31, 2015, as a result of his DIB, **[1] RAMON A. JULBE-ROSA** enrolled and benefitted from Part C of the Medicare Program with Triple S, Medicare Advantage Plan.

6.     From January 1, 2016 through June 30, 2019, as a result of his DIB, **[1] RAMON A. JULBE-ROSA** enrolled and benefitted from Part C of the Medicare Program with MMM, Medicare Advantage Plan.

7.     From January 1, 2012, through December 31, 2015, defendant **[1] RAMON A. JULBE-ROSA** fraudulently caused Medicare to pay Triple S, Medicare Advantage Plan, in capitation payments or premiums, approximately $34,213.32.

8.     Between January 1, 2016, through June 30, 2019, defendant **[1] RAMON A. JULBE-ROSA** fraudulently caused Medicare to pay MMM, Medicare Advantage Plan, in capitation payments or premiums, approximately $12,788.78.

9.     From on or about January 1, 2012, though the date of this Indictment, in the District of Puerto Rico, and elsewhere, the defendant,

**[1] RAMON A. JULBE-ROSA,**

knowingly and willfully executed or attempted to execute a scheme or artifice to defraud a health care benefit program or to obtain by means of materially false or fraudulent pretenses, representations, or promises, money and property owned by or under the custody or control of a

11

Indictment
*US v. [1] Ramón Julbe-Rosa and [2] Ena I. Octaviani-Santana*

health care benefit program, as defined in Title 18, <u>United States Code</u>, Section 24(b), that is, Medicare, in connection with the delivery of or payment for health care benefits, items, or services, that is, Medicare fraudulently paid Medicare Advantage Plans approximately $47,002.10 in capitation payments or premiums under Part C of the Medicare Program for the benefit of **[1] RAMON JULBE-ROSA**. All in violation of Title 18, <u>United States Code</u>, Section 1347.

## COUNT FIVE
### Theft of Government Property
### (Title 18 <u>United States Code</u> § 641)

1. Paragraphs fifteen and sixteen of the General Allegations are re-alleged and incorporated herein by reference, as if fully set forth herein.

2. Between on or about January 1, 2012, and continuing through on or about the date of this Indictment, in the District of Puerto Rico, the defendant,

### [1] RAMON A. JULBE-ROSA,

knowingly and willfully embezzled, stole, and converted to his own use or the use of another, money of the U.S. Department of Veterans Affairs, a department or agency of the United States, namely Unemployability Benefit payments to which he knew he was not entitled, having a value of approximately $141,372.35, in violation of Title 18, <u>United States Code</u>, Section 641.

## COUNT SIX
### False Statement or Representation Made to a Department or Agency of the United States
### (Title 18, <u>United States Code</u>, § 1001(a)(2))

1. Paragraphs fifteen and sixteen of the General Allegations are re-alleged and incorporated herein by reference, as if fully set forth herein.

2. On or about November 17, 2017, in the District of Puerto Rico and within the jurisdiction of this Court,

### [1] RAMON A. JULBE-ROSA,

12

the defendant herein, did willfully and knowingly make a materially false, fictitious, and fraudulent statement and representation in a matter within the jurisdiction of a department or agency of the United States, that is, the U.S. Department of Veterans Affairs, a department or agency of the United States, by making false representations in an Employment Questionnaire, that he was not employed or self-employed at any time during the past twelve (12) months. The statements and representations were false because, as **[1] RAMON A. JULBE-ROSA** then and there well knew, he had worked during the 12-month period prior to signing the Employment Questionnaire. All in violation of Title 18, United States Code, 1001(a)(2).

## COUNTS SEVEN THROUGH FOURTEEN
### Introduction into Interstate Commerce of Unapproved New Drugs
### (21 U.S.C. §§ 331(d) and 333(a)(2))

1.  Paragraphs seventeen through twenty-two of the General Allegations are re-alleged and incorporated herein by reference, as if fully set forth herein.

2.  From on or about at least August 19, 2013, and continuing up to and until the return of this Indictment, in the District of Puerto Rico and elsewhere within the jurisdiction of this Court, the defendant,

### [1] RAMON A. JULBE-ROSA,

aided and abetted by others known and unknown to the Grand Jury, engaged in a scheme to defraud designed to unlawfully enrich himself by manufacturing, packaging, labeling, marketing, promoting, distributing, and selling unapproved new drugs as treatment for various serious medical conditions, including cancer, diabetes, lupus, and rheumatoid arthritis, which included, among other things, the following:

a.   Defendant **[1] RAMON A. JULBE-ROSA** established, maintained, and operated the website www.aceitedeguanabana.com, through which he promoted and sold various

Indictment
*US v. [1] Ramón Julbe-Rosa and [2] Ena I. Octaviani-Santana*

products intended as treatments for serious medical conditions, including but not limited to soursop oil for cancer, diabetes terminator for diabetes, and moringa oil for asthma, lupus, arthritis, among other diseases (hereinafter "unapproved drugs");

b.       Defendant **[1] RAMON A. JULBE-ROSA** also promoted and marketed these unapproved drug products in newspaper, through radio-broadcasts, and on social media and web-based platforms, such as Facebook and YouTube, using the following identities/names:  Ray Julbe, Ramón Julbe, Ramón Rosa, Ramón Rosa 7, Aceite Puro De Guanábana, @GuanabanaRosa, Junior Guanabana, amigospr7@aol.com and RamonRosa 7 LLC;

c.       Defendant **[1] RAMON A. JULBE-ROSA** sold the unapproved drugs individually and also supplied wholesale quantities of these unapproved drug products to various retail outlets located in Puerto Rico and Florida for sale to end-user consumers; and

d.       Defendant **[1] RAMON A. JULBE-ROSA** sold at least $341,242.26 worth of unapproved new drugs.

3.  On or about the dates set forth below, in the District of Puerto Rico and elsewhere within the jurisdiction of this Court, defendant,

## [1] RAMON A. JULBE-ROSA,

with intent to defraud and mislead, introduced and delivered for introduction into, and caused the introduction and delivery for introduction into, interstate commerce, new drugs that did not have in effect with the FDA, as required, an approved New Drug Application, Abbreviated New Drug Application, or Investigational New Drug Application, as required under Title 21, United States Code, Section 355(a), as more fully described below:

14

Indictment
*US v. [1] Ramón Julbe-Rosa and [2] Ena I. Octaviani-Santana*

| COUNT | APPROX. DATE OF MAILING | UNAPPROVED NEW DRUGS | INTRODUCTION INTO INTERSTATE COMMERCE |
|---|---|---|---|
| 7 | 1/21/2015 | RamonRosa 7 Soursop oil | Via USPS (tracking no. 9400 1096 9993 9600 4973 92) from Morovis, Puerto Rico to Hazlet, New Jersey. |
| 8 | 8/29/2015 | RamonRosa 7 Soursop oil | Via USPS (tracking no. 9405 5096 9993 8735 3989 11) from Morovis, Puerto Rico to Orlando, Florida. |
| 9 | 7/18/2016 | RamonRosa 7 Soursop oil | Via USPS (tracking no. 9405 9096 9993 9102 5929 61) from Morovis, Puerto Rico to Orlando, Florida. |
| 10 | 7/21/2016 | RamonRosa 7 Soursop oil | Via USPS (tracking no. 9400 1096 9993 8639 4840 07) from Morovis, Puerto Rico to Newark, New Jersey. |
| 11 | 3/20/2017 | RamonRosa 7 Soursop oil<br><br>RamonRosa 7 Diabetes<br><br>Terminator | Via USPS (tracking no. 9405 9993 7412 0208 08) from Morovis, Puerto Rico to New Orleans, Louisiana. |
| 12 | 8/20/2018 | RamonRosa 7 Soursop oil | Via USPS (tracking no. 9405 8096 9993 9208 4548 38) from Morovis, Puerto Rico to Howard Beach, New York. |
| 13 | 8/20/2018 | RamonRosa 7 Soursop oil | Via USPS (tracking no. 9407 8096 9993 9211 1078 11) from Morovis, Puerto Rico to Ormond Beach, Florida. |
| 14 | 10/23/2018 | RamonRosa 7 Soursop oil<br><br>RamonRosa 7 Moringa oil | Via USPS (tracking no. 9400 1096 9993 9387 4234 61) from Morovis, Puerto Rico to Oviedo, Florida. |

Each count constituting a separate and distinct violation of Title 21, United States Code, Sections 331(d) and 333(a)(2).

## COUNT FIFTEEN
### Introduction into Interstate Commerce of Unapproved New Drugs
### (21 U.S.C. §§ 331(d) and 333(a)(2))

1.   Paragraphs seventeen through twenty-two of the General Allegations and the allegations of Counts Seven through Fourteen are re-alleged and incorporated herein by reference, as if fully set forth herein.

15

Indictment
*US v. [1] Ramón Julbe-Rosa and [2] Ena I. Octaviani-Santana*

2. On or about October 5, 2018, in the District of Puerto Rico and elsewhere within the jurisdiction of this Court, the defendants,

**[1] RAMON A. JULBE-ROSA,** and

**[2] ENA I. OCTAVIANI-SANTANA,**

with intent to defraud and mislead, introduced and delivered for introduction into, and caused the introduction and delivery for introduction into, interstate commerce, new drugs that did not have in effect with the FDA, as required, an approved New Drug Application, Abbreviated New Drug Application, or Investigational New Drug Application, as required under Title 21, <u>United States Code</u>, Section 355(a), to wit: defendants sold and delivered 40 bottles of RamonRosa 7 Soursop Oil and 40 bottles of RamonRosa 7 Moringa Oil, originally manufactured in Puerto Rico, to Company A, located in Winter Springs, Florida. All in violation of Title 21, <u>United States Code</u>, Sections 331(d) and 333(a)(2) and Title 18, <u>United States Code</u>, Section 2.

### COUNT SIXTEEN
**Fraud in Connection with Major Disaster or Emergency Benefits**
**(Title 18 <u>United States Code</u> § 1040)**

### SCHEME AND ARTIFICE TO DEFRAUD

1. Paragraphs twenty-six through twenty-eight of the General Allegations are re-alleged and incorporated herein by reference, as if fully set forth herein.

2. Beginning on or about October 9, 2017, and continuing through on or about the date of this Indictment, in the District of Puerto Rico, the defendant,

**[1] RAMON A. JULBE-ROSA,**

knowingly falsified, concealed and covered up by trick, scheme or device one or more material facts in connection with benefits authorized, transported, transmitted, transferred, disbursed or paid in connection with a major disaster declaration under section 401 of the Stafford Act, to wit: **[1]**

16

Indictment
*US v. [1] Ramón Julbe-Rosa and [2] Ena I. Octaviani-Santana*

RAMON A. JULBE-ROSA falsely represented to SBA that a residence located in Road 567, Morovis, Puerto Rico 00687 was his primary residence when Hurricane María struck Puerto Rico, when in fact **[1] RAMON A. JULBE-ROSA's** primary residence was located in Road 617, Morovis, Puerto Rico 00678.

## MANNER AND MEANS OF THE SCHEME AND ARTIFICE TO DEFRAUD

The manner and means used by the defendant to accomplish the trick, scheme or device included, among other things, the following:

3. It was a part of the manner and means of the unlawful scheme that on or about October 9, 2017, the defendant, **[1] RAMON A. JULBE-ROSA,** applied for an SBA Disaster Loan (SBA Loan # 145 2047 001) by falsely representing that on September 20, 2017, his primary residence, damaged by Hurricane María, was located at Road 567, Morovis, Puerto Rico 00687, although **[1] RAMON A. JULBE-ROSA,** there and then well knew that this was not his primary residence.

4. It was further part of the manner and means of the unlawful scheme that the defendant, **[1] RAMON A. JULBE-ROSA,** designated his personal bank account at USAA Federal Savings Bank as the payee account for any SBA disaster loan proceeds received in connection with the damages Hurricane María caused to his alleged primary residence located in Road 567, Morovis, Puerto Rico 00687.

5. As a result of this scheme, defendant, **[1] RAMON A. JULBE-ROSA,** fraudulently received from SBA benefits, as described in Title 18, United States Code, Section 1040. Specifically, the defendant received from SBA $50,000.00, all of which was authorized, transported, transmitted, transferred, disbursed or paid by electronic funds transfers into his bank account. All in violation to Title 18, United States Code, Section 1040.

Indictment
*US v. [1] Ramón Julbe-Rosa and [2] Ena I. Octaviani-Santana*

## COUNT SEVENTEEN
### False Statement or Representation Made to a Department or Agency of the United States
### (Title 18, <u>United States Code</u>, § 1001(a)(2))

1. Paragraphs twenty-three through twenty-five of the General Allegations are re-alleged and incorporated herein by reference, as if fully set forth herein.

2. On or about December 8, 2017, in the District of Puerto Rico and within the jurisdiction of this Court,

### [1] RAMON A. JULBE-ROSA,

the defendant herein, did willfully and knowingly make a materially false, fictitious, and fraudulent statement and representation in a matter within the jurisdiction of a department or agency of the United States, that is, the Federal Emergency Management Agency, an agency within the Department of Homeland Security, by making false representations in an Declaration and Release Form submitted as part of his application/registration for disaster assistance related to Hurricane María, that his primary residence was located in Road 567, Morovis, Puerto Rico 00687. The statements and representations were false because, as **[1] RAMON A. JULBE-ROSA** then and there well knew, his primary residence was located in Road 617, Morovis, Puerto Rico 00678. All in violation of Title 18, <u>United States Code</u>, 1001(a)(2).

### FORFEITURE ALLEGATION
### FOR COUNTS ONE, FIVE, SEVEN THROUGH FIFTEEN AND SIXTEEN

1. Upon conviction of the offenses in violation of Title 18, <u>United States Code</u>, Sections 641 and 1040 and Title 21, <u>United States Code</u>, Sections 331(d) and 333(a)(2), charged in Counts One, Five, Seven through Fifteen and Sixteen of this Indictment, the defendant, **[1] RAMON A. JULBE-ROSA**, shall forfeit to the United States, pursuant to Title 18, <u>United States Code</u>, Section 981(a)(1)(C), Title 21, <u>United States Code</u>, Section 334 and Title 28, <u>United States Code</u>, Section

18

Indictment
*US v. [1] Ramón Julbe-Rosa and [2] Ena I. Octaviani-Santana*

2461(c), any property, real or personal, that constitutes, or is derived from, proceeds traceable to

the commission of the offense, including but not limited to:

    a. Approximately $79,369.80 in United States currency paid by the SSA;

    b. Approximately $141,372.35 in United States currency paid by VA;

    c. At least $341,242.26 in United States currency for unapproved new drugs sold.

    2.  If any of the property described in paragraph 1 hereof as a result of any act or omission

of the defendant:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

    c. has been placed beyond the jurisdiction of this Court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property which cannot be divided without difficulty;

it is the intention of the United States, pursuant to Title 28, United States Code, Section 2461(c),

incorporating Title 21, United States Code, Section 853(p), to seek forfeiture of substitute property.

All pursuant to Title 18, United States Code, Section 981, Title 21, United States Code, Sections

334 and 853 and Title 28, United States Code, Section 2461(c).

## FORFEITURE ALLEGATION FOR COUNT FOUR

    1.  The allegations contained in Counts One through Seventeen of this Indictment are

hereby re-alleged and incorporated by reference for the purpose of alleging forfeitures pursuant to

Title 18, United States Code, Section 982(a)(7).

    2.  Upon conviction of the offense in violation of Title 18, United States Code, Section

1347 set forth in Count Four of this Indictment, the defendant, **[1] RAMON A. JULBE-ROSA,**

shall forfeit to the United States of America, pursuant to Title 18, United States Code, Section

19

Indictment
*US v. [1] Ramón Julbe-Rosa and [2] Ena I. Octaviani-Santana*

982(a)(7), any property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of the offense.

3.    If any of the property described above, as a result of any act or omission of the defendant:

> a.    cannot be located upon the exercise of due diligence;
>
> b.    has been transferred or sold to, or deposited with, a third party;
>
> c.    has been placed beyond the jurisdiction of the court;
>
> d.    has been substantially diminished in value; or
>
> e.    has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1) and Title 28, United States Code, Section 2461(c). All pursuant to Title 18, United States Code Section 982(a)(7) and Title 28, United States Code, Section 2461(c).

ROSA EMILIA RODRIGUEZ-VELEZ
United States Attorney

TRUE BI

FOREPERSON
Date: Jul / 24 / 2019

José Capó-Iriarte
Assistant United States Attorney
Chief, Criminal Division

Myriam Y. Fernández-González
Assistant United States Attorney
Chief, Financial Fraud and Corruption Unit

Vanessa Danette Bonano-Rodríguez
Special Assistant United States Attorney

20